UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


SANDRA FERGUSON,

      Plaintiff,

v.                              CASE No.  8:13-CV-2658-T-TGW


CAROLYN W. COLVIN, Acting
Commissioner of Social Security,


      Defendant.
_____


O R D E R

      The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[1]  Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed.

_____

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 17).

I.

The plaintiff, who was forty-seven years old at the time of the administrative hearing and who has a special education high school diploma, has worked as a short order cook (Tr. 21, 36, 1058). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to a closed head injury, high blood pressure, seizures, and knee problems (Tr. 275). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of (Tr. 14):

> seizure disorder/epilepsy, status post closed head injury; obesity; chronic rhinitis/sinusitis; arthritis, hydrathrosis, and osteoarthritis; depressive disorder not otherwise specified (NOS)/mood disorder secondary to head injury/adjustment disorder with depressed mood; post-traumatic stress disorder (PTSD)/anxiety disorder NOS.

In light of those impairments, the law judge determined (Tr. 17):

> The claimant has the residual functional capacity to perform a restricted range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The

claimant remains able to lift no more than 20
pounds at a time with frequent lifting or carrying of
objects weighing up to 10 pounds. The claimant
remains able to stand and/or walk, off and on, for
a total of approximately 6 hours of an 8-hour day
with sitting occurring intermittently during the
remaining time. The claimant also remains able to
sit for a total of approximately 6 hours of an 8-hour
day. The claimant can never climb ladders, ropes
or scaffolds, and can occasionally climb ramps and
stairs, balance, stoop, kneel, crouch, and crawl.
The claimant must avoid even moderate exposure
to hazards. The claimant remains able to perform
simple, 1 to 2 step, routine, repetitive, tasks.

The law judge concluded that, with these limitations, the plaintiff was unable

to perform any past relevant work (Tr. 21). However, based on the testimony

of a vocational expert, the law judge determined that the plaintiff could

perform other jobs that exist in significant numbers in the national economy,

such as retail marker, mail sorter, and assembler (Tr. 22). Accordingly, he

decided that the plaintiff was not disabled (Tr. 23). The Appeals Council let

the decision of the law judge stand as the final decision of the defendant.

II.

In order to be entitled to Social Security disability benefits and

supplemental security income, a claimant must be unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff asserts four challenges to the law judge's decision, none of which are meritorious. Furthermore, the arguments in the

memorandum lack adequate development and citations to the record, in clear violation of the Scheduling Order and Memorandum Requirements (Doc. 15).

A. The plaintiff's first and second arguments generally assert that the law judge failed to "follow the opinion of treating physicians" and "weigh the evidence in accordance with law" (Doc. 19, pp. 3, 6). These arguments challenge the law judge's discounting of the opinions of consultative examiners Félix Ortiz, Psy.D., and Edwin Lamm, M.D. More specifically, the plaintiff argues that the law judge failed to state the weight he afforded the opinions of Dr. Ortiz and Dr. Lamm, and that the law judge failed to "articulate the reasons for rejecting the[ir] opinions" (id., pp. 5, 7, 8, 9).[2]

Initially, the Commissioner appropriately points out (Doc. 20, p. 7) that the plaintiff erroneously characterizes these doctors as "treating physicians" whose opinions are entitled to considerable or substantial weight (see, e.g., Doc. 19, p. 7). This is a substantial misstatement, as a consulting

---

[2]The plaintiff also mentions complaints that she made to treating physician, Dr. Thomas DiGeronimo (Doc. 19, p. 3). However, the plaintiff does not assert that the law judge rejected an opinion of functional limitations by Dr. DiGeronimo (see id.). Therefore, to the extent the plaintiff claims that the law judge discounted such an opinion, that argument is forfeited for lack of development (see Doc. 15, p. 2).

examiner is not afforded the deference given to a treating physician. Thus, a treating source is a physician who has "an ongoing treatment relationship" with a plaintiff. 20 C.F.R. 404.1502, 416.902. A treating physician's opinion is more probative, and entitled to greater weight, because the treating physician has a "detailed, longitudinal picture of [the plaintiff's] medical impairment[s]." 20 C.F.R. 404.1527(c)(2), 416.927(c)(2). Therefore, a medical opinion offered by a physician after examining the plaintiff on just one occasion is not entitled to the weight of a treating physician. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1160 (11th Cir. 2004); McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987); Denomme v. Commissioner of Social Security, 518 Fed. Appx. 875, 877 (11th Cir. 2013) (law judge does not have to defer to opinion of doctor who conducted a single examination).

Dr. Ortiz, a psychologist with Hope Counseling Centers, conducted a one-time consultative psychological evaluation of the plaintiff on October 20, 2009 (Tr. 624-27). As the law judge recounted in his decision (Tr. 19-20):

> Felix A. Ortiz, Psy.D. interviewed and evaluated the claimant in October 2009 and noted inappropriate dress, problems in gait and posture, slow paced energy of speech, depressed mood, an affect consistent with mood, slow motor activity, a groggy appearance, and evidence of a thought disorder. The claimant was still oriented, provided eye contact, had coherent speech, demonstrated a collaborative attitude, and was cooperative. Memory testing indicated a general ability to obtain and retain verbal and nonverbal information to be broadly in the Extremely Low range. Dr. Ortiz noted diagnoses of anxiety disorder NOS (by report) and provisional amnestic disorder NOS. Dr. Ortiz also estimated the claimant to have a Global Assessment of Functioning score [of 50] indicative of serious impairment in functioning (Exhibit 12F).

Dr. Ortiz opined further that, "[t]he symptoms based on client report, clinical observations, and assessment appear to be severely impacting activities of daily living, vocational performance, and interpersonal interactions" (Tr. 627).

The plaintiff argues that the law judge should have found her mentally disabled based upon Dr. Ortiz's assessment of a GAF score of 50, her low scores on the memory portion of the Wechsler Memory Scale (WMS), and Dr. Ortiz's opinion that her symptoms "appear to be severely

impacting" her mental functioning (Doc. 19, p. 4; see Tr. 627). However, the law judge rejected those aspects of Dr. Ortiz's evaluation, and gave a cogent explanation for doing so. Thus, the law judge found that the plaintiff's low scores on the memory portion of the WSM were not reliable. In this regard, the law judge stated (Tr. 16):

> Memory testing conducted by a consultative examiner indicated the claimant's ability to obtain and retain verbal and nonverbal information was broadly in the Extremely Low range (Exhibit 12F). However, a Disability Determination Services (DDS) psychologist noted this was an underestimate of the claimant's memory functioning (Exhibit 19F). Progress notes from Dolan Mental Health also subsequently confirmed intact memory (Exhibits 30F, 31F).

This explanation is sufficient to discount those test scores, and it is supported by substantial evidence. Thus, Dr. Thomas Clark, a non-examining reviewing doctor, opined that her performance on the memory testing was an underestimate of her abilities, explaining that it is inconsistent with the plaintiff's treatment records that do not reflect significant mental complaints, signs, symptoms or restrictions; and that, despite a head injury in 2004 that

allegedly precipitated her memory problems, the plaintiff subsequently had a significant work history unimpeded by memory issues (Tr. 753).

Furthermore, non-examining reviewer Dr. B. Lee Hudson, whose opinion the law judge afforded significant weight (Tr. 16, 20), opined that the plaintiff's performance at the consultative examination was not valid (Tr. 644). In this regard, Dr. Hudson explained (id.):

> It appears that [the plaintiff's] medications have a sedating effect and there is some suspicion that [the plaintiff] continues to abuse ETOH. There is evidence of no more than mild ADL limitations due purely to mental SX and no evidence of social limitations due to mental. Performance at mental CE revealed limitations in mem/attn/conc; however, description of [plaintiff] suggested [plaintiff] was sedated at time of assessment. Based on all available data, there is evidence of no more than moderate CPP limitations, w/ neurologist notes given greater weight than mental CE performance. In sum, totality of evidence revealed that [plaintiff's] mental SX are not of sufficient severity to interfere w/ability to perform SRT's [simple repetitive tasks] w/adequate CPP over normal workday/week w/in physical limits.

(See also Tr. 627) (Dr. Ortiz acknowledges that the plaintiff's alleged memory problems could have been medication side effects).

The plaintiff's memorandum does not even acknowledge the law judge's explanation for discounting the memory test scores and, therefore, she certainly has not undermined this explanation. Consequently, the plaintiff's challenge to the law judge's rejection of the WSM memory test scores is baseless.

The plaintiff also focuses on Dr. Ortiz's assessment of a GAF score of 50, and his opinion that the plaintiff's mental impairments "severely impact[]" her functioning (Tr. 627). The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34. The law judge considered the GAF scores assigned to the plaintiff by Dr. Ortiz and other medical providers, and noted scores ranging from 50, which is at the top of the range of serious symptoms, to 70, which indicates only mildly impairing symptoms (Tr. 20).[3] In this regard, the law judge stated (id.):

---

[3]Notably, it has been held that a GAF score of "50 ... indicates [that a plaintiff] could perform some substantial gainful activity." Hillman v. Barnhart, 48 Fed. Appx. 26, 30 n.1 (3d Cir. 2002); see also Jones v. Astrue, 494 F.Supp.2d 1284, 1288 (N.D. Ala. 2007); Speagle v. Astrue, 2010 WL 750341 at *10-*11 (M.D. Fla. 2010).

> The undersigned considered the various GAF scores noted within the record, but they vary greatly and are not found to be indicative of the claimant's specific mental work-related limitations. Moreover, the Commissioner has specifically declined to endorse the use of the GAF scale in disability programs stating "[i]t does not have a direct correlation to the severity requirements in our mental disorders listings (65 Fed. Reg. 50746, 5-764-50765 (August 21, 2000)).

Moreover, not only did the Commissioner decline to use the GAF scale, but the most recent edition of the <u>Diagnostic and Statistical Manual of Mental Disorders</u>, (DSM-5) (5th ed., 2013), p. 16, has discontinued use of the GAF scale. Consequently, the plaintiff's reliance upon the GAF score is unpersuasive.

In addition, as is evident from the law judge's decision, there is a stark contrast between Dr. Ortiz's opinion of serious mental impairment and the plaintiff's history of mental health treatment and activities of daily living (<u>see</u> Tr. 15, 16, 20). For example, the law judge noted the routine nature of the plaintiff's mental treatment (Tr. 16), that treatment notes from Dolan Mental Health indicate that she had an intact memory (<u>id.</u>), and that the CT scan of the brain was normal (Tr. 18). Furthermore, the progress notes of the

plaintiff's treating neurologist Dr. DiGeronimo, regularly showed that the plaintiff was oriented x3, and had intact attention, concentration and memory (see Tr. 490, 494, 524, 565, 700).

Moreover, other medical providers opined that, despite a depressed mood, her mental status evaluations were essentially normal. See Tr. 1094 (oriented x3, normal attention and concentration, mature insight/judgment, "good" remote and immediate memory, and a cooperative attitude); Tr. 1047-49 (oriented x3, with intact memory and good judgment); Tr. 976, 982 (alert and oriented, with normal thought processes and content, a cooperative attitude, no suicidal ideation).

Additionally, the law judge noted that a finding of severe mental limitations is inconsistent with the plaintiff's activities of personal care, caring for her dog, shopping, light cooking, daily visits with family, and playing cards (Tr. 15, 16, 20, 21; see Tr. 295, 296, 339, 340, 341). See Forrester v. Commissioner of Social Security, 455 Fed. Appx. 899, 902 (11th Cir. 2012) (the law judge does not need to give even a treating physician's opinion considerable weight if evidence of the claimant's daily activities contradict the opinion).

The law judge also aptly considered that the assertion of serious mental impairments is inconsistent with the plaintiff's reported attempts to seek employment and her intention to take a driving under the influence (DUI) course in order to get her driver's license reinstated (Tr. 20; see Tr. 1053). In sum, the law judge reasonably discounted Dr. Ortiz's assessment of the plaintiff's GAF score and his opinion that the plaintiff's mental impairments "appear to be severely impacting activities of daily living, vocational performance, and interpersonal interactions" (Tr. 627).

Notably, the plaintiff does not acknowledge, and she certainly does not undermine, any of the reasons given by the law judge for discounting Dr. Ortiz's opinion of serious mental impairments. Rather, the plaintiff incorrectly asserts that the law judge "did not specifically articulate the reasons for rejecting the opinion[] of Dr. Ortiz" (Doc. 19, p. 5).

The plaintiff, furthermore, does not identify evidence compelling the law judge to accept Dr. Ortiz's opinion that she has severe mental dysfunction. See Adefemi v. Ashcroft, supra. In this regard, the plaintiff points out that another medical provider assigned the plaintiff a GAF score of 50, and that the plaintiff's head injury in 2004 could cause memory

problems (Doc. 19, p. 4). However, as the law judge noted, the plaintiff also received from other medical providers estimates of GAF scores as high as 70 (Tr. 20), and it is the province of the law judge to resolve conflicts in the record. See Watson v. Heckler, 738 F.2d 1169, 1172 (11th Cir. 1984) (noting it is the responsibility of the administrative law judge to resolve the conflict between physician's opinions). Furthermore, the circumstance that the plaintiff had a head injury does not establish that she has disabling memory problems, especially in this case where the plaintiff engaged in substantial gainful employment for years after the injury, and she did not even allege memory problems in her disability application.

Moreover, it is insufficient to merely identify evidence that could support a finding of disability; rather, the plaintiff must identify evidence that would compel the law judge to find mental disability because the law judge's resolution of conflicting evidence is entitled to deference. See Adefemi v. Ashcroft, supra; see also Lawton v. Commissioner of Social Security, 431 Fed. Appx. 830, 833 (11th Cir. 2011) ("While the record does contain some evidence that is contrary to the ALJ's determination, we are not permitted to reweigh the importance attributed to the medical evidence."). Therefore, the

argument that the law judge erroneously discounted Dr. Ortiz's opinion of serious mental limitations lacks merit.

Next, the plaintiff argues that the law judge improperly rejected the opinion of consultative physical examiner Dr. Edwin Lamm (Doc. 19, p. 5). The plaintiff apparently challenges the law judge's rejection of Dr. Lamm's comment that, "because of [the plaintiff's] seizures, [she] would have difficulty in finding any kind of employment" (Tr. 622). The law judge addressed in the decision Dr. Lamm's examination as follows (Tr. 18):

> [A] consultative examination was conducted to help more fully evaluate her physical condition. In September of 2009, Edwin Lamm, M.D. interviewed and examined the claimant and listed impressions of history of seizure disorder secondary to head trauma, chronic low back pain, and poorly controlled hypertension. The claimant walked with a normal gait, required no assistive device, got off and on the examination table without difficulty, had normal behavior, had no deformities or edema in her extremities, had intact motor strength, and had normal range of motion in all areas. The claimant was only noted to have a soft area in her left frontal temporal skull measuring 1 to 2 inches and 3/5 grip strength in her right hand. Dr. Lamm concluded the claimant would have difficulty finding any kind of employment because of seizures, but the undersigned notes [the plaintiff] reported

experiencing five or six seizures at a past job (Exhibit 11F).

Thus, the law judge discounted Dr. Lamm's opinion that seizures would preclude the plaintiff's employment because that opinion was not supported by objective findings. This is a valid reason for rejecting Dr. Lamm's opinion. See Crawford v. Commissioner of Social Security, supra, 363 F.3d at 1159 (physician's report "may be discounted when it is not accompanied by objective medical evidence"); 20 C.F.R. §404.1527(c)(3), 416.927(c)(3) ("[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion."). The conclusory nature of Dr. Lamm's opinion is, in itself, a recognized basis for discounting even a treating physician's opinion. See Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987); Lanier v. Commissioner of Social Security, 252 Fed. Appx. 311, 313 (11th Cir. 2007).   Moreover, Dr. Lamm's opinion regarding the plaintiff's vocational opportunities is not even a medical opinion, but rather impermissibly opines on a vocational issue reserved to the Commissioner. 20 C.F.R. 404.1527(d), 416.927(d); Lanier v. Commissioner of Social Security,

supra, 252 Fed. Appx. at 314; Shaw v. Astrue, 392 Fed. Appx. 684, 687-88 (11th Cir. 2010).

Indeed, Dr. Lamm's opinion does not address the issue whether the plaintiff is physically capable of performing substantial gainful activity. Rather, Dr. Lamm opined that "[t]his 44-year-old woman, because of her seizures, would have difficulty in finding any kind of employment" (Tr. 622). Thus, Dr. Lamm merely said that the plaintiff would have difficulty in finding a job, not that she would be unable to perform a job. Importantly, the Social Security Act provides that a claimant will be determined to be disabled only if she is unable to do her prior work or other work in the national economy, "regardless of ... whether [s]he would be hired if [s]he applied for work." 42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B). Consequently, Dr. Lamm's opinion is beside the point.

Furthermore, the law judge explained why he did not find the plaintiff's seizure disorder debilitating. Thus, the law judge stated (Tr. 17):

> The claimant was ... followed by neurologist Thomas A. DiGeronimo, M.D. for a history of seizures reportedly occurring since a traumatic head injury. Dr. DiGeronimo noted post-traumatic epilepsy, history of excessive alcohol use ... and

prescribed medication to help control the claimant's seizures. However, progress notes indicate that the claimant was not always consistent with taking prescribed medication [which, the law judge also noted, decreased her seizures (Tr. 18)] and Dr. DiGeronimo was unsure whether she was compliant with advice to avoid alcohol. Dr. DiGeronimo noted that the claimant's breakthrough seizures were typically due to alcohol use, and she at times presented to appointment with the smell of alcohol on her breath (Exhibits 3F, 8F-10F, 16F, 25F).

The law judge also pointed out that a CT scan of the claimant's head confirmed no acute intracranial abnormalities (Tr. 18; see Tr. 928), and that the only work limitation placed on the plaintiff by Dr. DiGeronimo was to avoid heights (Tr. 18; see, e.g., Tr. 490, 494). Thus, the plaintiff's treating neurologist did not even opine that the plaintiff's seizure disorder was disabling. Moreover, the law judge considered the opinion of Dr. Robert Whittier, a non-examining reviewing physician, who opined after reviewing the plaintiff's medical records that the plaintiff's seizure disorder was not disabling (Tr. 19, 734).

Again, the plaintiff does not acknowledge, and she certainly has not undermined, any of the law judge's reasons for discounting Dr. Lamm's

opinion that she was unable to work. Rather, the plaintiff asserts that the opinions of Dr. Ortiz and Dr. Lamm "should have been accorded great weight for various reasons. The opinions are based on objective clinical testing and accepted orthopedic testing methods, and are consistent with each other" (Doc. 19, p. 8). Further, the plaintiff alleges in a conclusory manner (id., p. 7):

> Even though a specific disability finding was not made by the other treating sources ... the findings when considered in combination generally established the inability to be gainfully employed (T. 396-1112). The ALJ highlighted the findings made by the treating sources pointing toward disability, yet denied the claim (T. 16-20).

The plaintiff's contentions, in which she cites essentially to the entire medical record (Doc. 19, p. 7, citing "T. 396-1112"), clearly violate the Scheduling Order and Memorandum Requirements which direct the plaintiff to "identify with particularity" the basis for the challenges and support them "by citations to the record of the pertinent facts" (Doc. 15, p. 2) (emphasis added). Accordingly, those contentions are forfeited (id.). In any event, the conclusory arguments are meritless, as they do not state a meaningful argument why acceptance of either consultative examiner's opinion of

-20-

disability is compelled in this case. See Adefemi v. Ashcroft, supra; Graham

v. Bowen, 790 F.2d 1572, 1575 (11th Cir. 1986) ("The weighing of evidence

is a function of the factfinder, not of the district court."). Thus, the plaintiff

merely quibbles with the law judge's resolution of the conflicting evidence

without showing that the evidence required a contrary finding.

The plaintiff also argues that the law judge impermissibly

accepted the opinions of the non-examining reviewing doctors over those of

Dr. Ortiz and Dr. Lamm (Doc. 19, pp. 5-6, 7-8).  Initially, it is noted that the

plaintiff's citation to caselaw holding that the opinion of a non-examining

physician is entitled to little weight when it contradicts the opinion of a

treating physician (id., pp. 5-6) is inapposite because, as discussed, Dr. Ortiz

and Dr. Lamm are not treating physicians.

Furthermore, the law judge may give greater weight to the

opinion of a non-examining doctor over a consultative examiner where, as

here, the law judge found that the opinions of the reviewing doctors were

consistent with the overall record (Tr. 16, 20), and explained why the

opinions of the consultative examiners were not (see supra, pp. 8-19).  See

Wilkinson v. Commissioner of Social Sec., 289 Fed.Appx. 384, 386 (11th Cir.

-21-

2008) ("The ALJ did not err in assigning minimal weight to the medical opinion of the examining physicians supporting Wilkinson's claim of disability because he found, after reviewing the entire record, that their opinions were not supported by the evidence.").

Additionally, the plaintiff argues that the law judge failed to state "the weight" afforded to the opinions of Dr. Ortiz and Dr. Lamm (Doc. 19, pp. 7, 8, 9). This contention is meritless because it is obvious that the law judge rejected their opinions of disability, and that rejection is a focus of the plaintiff's appeal.

Furthermore, as discussed supra, pp. 8-19, the law judge gave adequate explanations, supported by substantial evidence, for rejecting those opinions of disability. Therefore, the law judge clearly fulfilled his obligation to evaluate those opinions. See 20 C.F.R. 404.1527(b), 416.927(b).

C. Next, the plaintiff challenges the law judge's credibility determination (Doc. 19, pp. 9-12). It is well-established that responsibility for making credibility determinations is reposed in the Commissioner and his determination is entitled to deference. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Graham v. Bowen, supra. Consequently, to overturn

the Commissioner's credibility finding, the plaintiff must demonstrate that the evidence compels the contrary finding.  Adefemi v. Ashcroft, supra.  The plaintiff's criticisms of the credibility finding do not amount to such a showing.

The plaintiff testified at the hearing that, since she was hit in the head with a hammer in 2004, she has had a bad memory and has experienced seizures (Tr. 43-44).  Further, she stated that she has pain in her back, shoulders and knees (Tr. 44).  Consequently, she testified that she can only walk a block and one-half before stopping, and lift only about five or ten pounds before her back and shoulder "give out" (Tr. 42, 46).

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and he referred to the pertinent regulations and Social Security rulings (Tr. 17). He even cited Landry v. Heckler (id.). Moreover, he set out the two-step process that the regulations and rulings establish (id.). This demonstrates that the law judge employed the proper standards. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

Significantly, the law judge did not totally reject the plaintiff's allegations of impairment, as he substantially limited the plaintiff to a restricted range of light work. Thus, the law judge determined that it is reasonable to conclude that her physical impairments cause some pain, weakness and exertional limitations (Tr. 19). Consequently, the plaintiff was

"found to be capable of only light level exertional activity" with limitations on postural movements, no climbing of ladders, ropes, or scaffolds, and the avoidance of "even moderate exposure to hazards" (id.). Further, with regard to the plaintiff's mental impairments, the law judge determined that "it is reasonable to conclude the claimant's concentration and memory problems cause work related limitations. The claimant is therefore found to be capable of only simple, 1 to 2 step, routine repetitive tasks" (Tr. 20).

In making the credibility determination, the law judge considered the plaintiff's subjective complaints and appropriately analyzed them. Thus, the law judge stated (Tr. 20-21):

> Through supporting documents and hearing testimony, the claimant has alleged an inability to work due to seizures, medication side effects, high blood pressure, pain in areas including her back, knees, shoulders and legs, difficulty walking, and impaired memory. ... After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The law judge added that "[t]he objective medical evidence does not confirm the severity of the alleged symptoms, nor does the weight of the medical and non-medical evidence demonstrate the presence of an impairment that reasonably could be expected to produce functional limitation to the degree alleged by the claimant" (Tr. 17).

Further, the law judge's decision discussed medical evidence and activities of daily living that are inconsistent with disabling limitations (Tr. 15-21). Moreover, the law judge cited several inconsistent statements by the plaintiff which undermine her credibility, such as her testimony that she does not drive due to her seizure disorder, but was reportedly taking a DUI class to get her driver's license reinstated; and representing that she is unable to walk her dog, but hospital records show she was treated for a fall while walking the dog and bicycling at the same time (Tr. 21). The law judge also noted in the decision that the plaintiff denied drinking alcohol to her neurologist, but that Dr. DiGeronimo noted the smell of alcohol on her breath (Tr. 17). The law judge additionally mentioned that the assertion of serious mental impairments is inconsistent with the plaintiff's reported attempts to

seek employment (Tr. 20; see Tr. 1053 ("actively seeking empoyment")).[4]
This explanation is clearly adequate to discount the plaintiff's subjective
allegations of disabling mental limitations. See Heppell-Libsansky v.
Commissioner of Social Security, 170 Fed. Appx. 693, 699 (11th Cir. 2006).

Additionally, it is permissible for a law judge to consider non-
compliance with prescribed treatment as a factor in determining the
credibility of a plaintiff's allegations. Ellison v. Barnhart, 355 F.3d 1272,
1275 (11th Cir. 2003); 20 C.F.R. 404.1529, 416.929; S.S.R. 97–6p, 1996 WL
374186 at *7 ("[T]he individual's statements may be less credible ... if the
medical ... records show that the individual is not following the treatment as
prescribed and there are no good reasons for this failure."). The law judge's
decision mentions the plaintiff's non-compliance with her seizure medication
regimen, and that it was suspected that she was not heeding Dr.
DiGeronimo's advice to stop drinking alcohol (see Tr. 17; Tr. 913 (reporting
to physician at hospital in July 2010 that she drinks a " 6 pk/day"); Tr. 935

_____

[4]Furthermore, the record reflects that the plaintiff continued to receive
unemployment benefits during the alleged disability period (see Tr. 223, 236). The
plaintiff's acceptance of unemployment benefits, which requires a representation that she
is able and willing to work, see Fla. Stat., §443.091(d); Torres v. Florida Unemployment
Appeals Commission, 983 So.2d 10 (Fla. App. 2008), also undermines the credibility of
the plaintiff's allegation that she was too incapacitated to work.

(the plaintiff reported that she had not been taking her seizure medication)).

Notably, Dr. DiGeronimo opined that compliance in these areas would reduce

the frequency and severity of the plaintiff's seizures (see Tr. 18).

The plaintiff complains about the law judge's consideration of

her activities of daily living (Doc. 19, p. 10).  However, it is clearly proper for

the law judge to consider such activities in assessing the plaintiff's credibility.

Macia v. Bowen, 829 F.2d 1009, 1012 (11ᵗʰ Cir. 1987); Couch v. Astrue, 267

Fed. Appx. 853, 856 (11ᵗʰ Cir. 2008); May v. Commissioner of Social Sec.

Admin., 226 Fed. Appx. 955, 959 (11ᵗʰ Cir. 2007).  In fact, the regulations

provide that daily activities are to be considered in determining the credibility

of the plaintiff's subjective complaints. 20 C.F.R. 404.1529(c)(3)(i),

416.929(c)(3)(i).

Furthermore, contrary to the plaintiff's contention, the plaintiff's

activities of daily living clearly support the law judge's credibility

determination.  Thus, the plaintiff argues that she is mentally incapacitated,

but engages in personal care, cares for her dog, goes shopping, does light

cooking and household chores, visits daily with family, watches television,

plays cards, and does gardening (Tr. 15, 16, 20, 21; see Tr. 47, 295, 296, 339, 340, 341).

Accordingly, the law judge could have reasonably concluded that these activities are inconsistent with her claims of debilitating symptoms and limitations. See Moore v. Barnhart, supra, 405 F.3d at 1212 (upholding a credibility determination where the law judge "relied on the inconsistencies between [the plaintiff's] descriptions of her diverse daily activities and her claims of infirmity"); Hennes v. Commissioner of Social Security Administration, 130 Fed. Appx. 343, 348-49 (11th Cir. 2005). Furthermore, it is not only that the plaintiff's activities are incompatible with the allegations of mental incapacity, but the plaintiff's false representations of her capabilities to engage in everyday activities – e.g., stating that she cannot walk the dog, when she in fact does – also undermine her credibility.

The plaintiff also argues, in a conclusory manner, that the credibility determination is not supported by substantial evidence because "objective diagnostic and clinical testing reveal symptoms and impairments of the nature to cause the pain alleged" (Doc. 19, p. 11). The law judge, however, expressly found that the plaintiff has several physical and mental

severe impairments which cause pain and functional limitations (Tr. 14, 19, 20). Thus, he rejected only that the severity, frequency and duration of those symptoms are disabling.

The plaintiff also argues that the law judge's reasons for his credibility determination "were contrary to the findings and opinion of treating sources" (Doc. 19, p. 12). However, there were no treating sources that opined the plaintiff was unable to work. To the contrary, the plaintiff's treating neurologist advised only that the plaintiff avoid work involving heights. Furthermore, as discussed, the law judge stated ample cause for discounting the conclusory opinions of disability by one-time examiners, Dr. Ortiz and Dr. Lamm. In sum, the plaintiff's credibility challenge is meritless.

D. The plaintiff's final argument is titled "The decision is not supported by substantial evidence in the record" (id.). Notably, the Scheduling Order and Memorandum Requirements specifies that "[i]t is not sufficient ... to assert an issue that simply states that the Commissioner's decision is not supported by substantial evidence" (Doc. 15, p. 2). Thus, such a contention fails to identify with sufficient particularity the discrete grounds upon which the decision is being challenged (id.).

The substance of the plaintiff's argument confirms this conclusion. Thus, the plaintiff recites, for one and one-half pages, the standards by which a disability claim is evaluated, and in the final paragraph makes some isolated references to the record (Doc. 19, pp. 12, 13). Therefore, in accordance with the Scheduling Order and Memorandum Requirements, this argument is deemed forfeited (Doc. 15).

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner is hereby **AFFIRMED**. The Clerk is directed to enter judgment accordingly and to **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this *17*th day of March, 2015.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

-31-